MARTIN *v.* ELLIOTT.

SALE OF HORSE—BREACH OF WARRANTY—RIGHT OF DEFENDANT TO EXAMINE HORSE.

> Upon the trial of an action for breach of warranty on the sale of a horse, an order that defendant may send a veterinary surgeon upon plaintiff's premises to examine the horse, on condition that he be accompanied by plaintiff, or some one selected by him, and requiring plaintiff to permit access to his premises for such purpose, is beyond the power of the court, especially where the testimony of the surgeon would be cumulative merely.

Error to Shiawassee; Wisner, **J.** Submitted June 12, 1895. Decided July 2, 1895.

Case by Joseph Martin against Marcus D. Elliott for fraud and breach of warranty. From a judgment for defendant, plaintiff brings error. Reversed.

*Albert L. Chandler*, for appellant.

*John T. McCurdy*, for appellee.

LONG, J. This action is brought to recover damages for breach of warranty in the sale of a mare. On the trial the plaintiff contended that in the purchase the defendant warranted the mare sound and all right, whereas in fact she was not sound, but sick and disordered, and had been so overdriven and heated that she broke out in blotches and continued so up to the time of the trial. The plaintiff testified that these blotches were as large as a kernel of wheat, and festered; that he used a wash which drove them away, but that they would come back again. One of plaintiff's witnesses testified that the horse had these blotches at the time plaintiff purchased her, but that the defendant said she had scratches, and her hair looked rough from want of care.

This witness testified that she was now no better than when purchased, as he had seen her a week before, and that she did not have scratches, but something else which would injure her value. Plaintiff paid $200 for her, and gave testimony that she was in fact of little or no value. At the time of the trial the mare was in plaintiff's barn. The defendant claimed that, in view of this testimony, he had the right to have an examination made of the mare by a veterinary surgeon. The court then made the following order:

"On motion of John T. McCurdy, attorney for said defendant, and it also appearing to the court that the plaintiff in this case claims the horse about which this action is brought is now in practically the same condition that she was at the time she was purchased from defendant, and that since said purchase the horse had been in possession of plaintiff in this case; therefore, after hearing Odell Chapman and A. L. Chandler, attorneys for said plaintiff, in opposition thereto, it is ordered that the defendant have the privilege of sending a veterinary surgeon to examine the mare in question, provided he shall be accompanied by the plaintiff or some person whom plaintiff may select. The court further orders that the plaintiff give such veterinary surgeon access to the premises and stable where said mare is located to make such examination. This order is made upon the authority of the case of *Graves* v. *City of Battle Creek*, 95 Mich. 266. Such examination to take place at any time between the hours of 6 o'clock and 10 o'clock p. m. of this day."

The defendant sent Mr. Van Sickle, a veterinary surgeon, to make the examination. Plaintiff objected to the making of the order and to the veterinary surgeon's going to make the examination. Mr. Van Sickle, after the examination, was called as a witness, and testified that the mare was in perfect health, but had a slight irritation under the fetlock, and also a few pimples, but no pustules. The jury returned a verdict in favor of the defendant. The plaintiff contends that the court was in error in making this order.

It appeared in the case of *Graves* v. *City of Battle Creek*, 95 Mich. 266, upon which the court below relied in making the order, that the plaintiff was seeking to recover for personal injuries. She appeared as a witness, and the jury observed her use of the injured arm and wrist. A physician testified in her behalf to its condition and the prospect of recovery. He was asked:

"Is the fact that the plaintiff is able to use her arm in the ordinary ways, as it has appeared here, as she used it in this room, as you have seen her when she was in the witness chair,—is that proof that the injury to the arm has subsided, and that there is no pain there; that is, is there any surgical proof?"

This question was permitted to be answered. The defense then requested the court to direct that plaintiff remove her glove from the injured hand and exhibit the hand to the jury; also that she submit the injured hand to a physician to be examined in the presence of the jury. This was refused. It was held by this court that the direction should have been given. It was said:

"The rule is well recognized by substantially all the courts of the country that the injured party *may* exhibit his wounds to the jury, in order to show their nature or extent, and that rule has been followed in this State. Testimony which is open to one party ought logically to be open to his opponent, if it can be obtained with due regard to decency, and in the orderly conduct of the trial."

The fact was recognized in the above case that a wide discretion is vested in the trial court, which justifies a refusal to require the examination when the necessities of the case are not such as to call for it, or where the sense of delicacy of the plaintiff may be offended by the exhibition, or where the testimony would be merely cumulative.

The rule thus laid down did not, however, justify the order made in the present case. The mare in question was in possession of the plaintiff and upon his premises.

The order compelled the plaintiff to permit the parties to enter upon his premises to make the examination, and by a party whom the plaintiff objected to as coming there. The court had no power to compel the plaintiff to submit to such an invasion of his premises. If the plaintiff refused to let the mare be examined at that time,. or to have his premises visited for that purpose, it was his right. The testimony also was merely cumulative. Several witnesses had seen the horse only the day before, and gave testimony as to her condition.

For this error the judgment must be reversed, and a new trial ordered. We need not discuss the other questions raised.

McGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.